IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:18–CR–127 |
| vs. | ORDER ON CONSENT MOTION FOR A REDUCED SENTENCE |
| RAMON CEBALLO GASPAR, | |
| Defendant. | |

## I. BACKGROUND

This matter is before the Court on Defendant Ramon Ceballo Gaspar's Consent Motion for a Reduced Sentence Pursuant to 18 U.S.C. § 3582(c)(2). Filing 208. On January 6, 2020, the Defendant was sentenced to a term of 135 months of imprisonment based on his conviction for conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. Filing 21 at 1; Filing 160 at 1–2.[1]

On April 5, 2023, the United States Sentencing Commission voted to promulgate amendments to the United Sentencing Guidelines.[2] One of these was Amendment 821. Part B of Amendment 821 created a new guideline that provides a decrease of two offense levels for those who qualify as "zero-point offenders," *i.e.*, those who are not assessed any criminal history points and meet other specified criteria. *See* U.S.S.G. § 4C1.1. On August 24, 2023, the Sentencing Commission decided via a split-vote to give Amendment 821 retroactive effect.[3] With the Commission's vote to make Amendment 821 retroactive, defendants, such as Mr. Gaspar, can

---

[1] The Defendant was sentenced by the late Judge Laurie Smith Camp. Defendant's case was subsequently reassigned to the undersigned on September 30, 2021. Filing 170.

[2] *See* U.S. SENT'G COMM'N, News Release (Apr.. 5, 2023), available at https://www.ussc.gov/about/news/press-releases/april-5-2023 (last visited, Aug. 7, 2024).

[3] *See* U.S. SENT'G COMM'N, News Release (Aug. 24, 2023), available at https://www.ussc.gov/about/news/press-releases/august-24- (last visited, Aug. 7, 2024).

1

petition the Court to lower their sentences based on how their guideline custody range would have been affected if the zero-point offender adjustment had applied at the time they were sentenced. In this case, Mr. Gaspar and the Government have entered into a stipulation agreeing that the Defendant's "new, reduced sentence under the amended guidelines should be 120 months[.]" Filing 209 at 1.

After receiving the Defendant's Consent Motion, the Court decided to hold a hearing on the matter. Filing 211 (Text Order); Filing 212 (Text Minute Entry). During the hearing, Counsel for the Defendant noted that the Defendant was incarcerated in Mexico pursuant to the Prisoner Transfer Treaty between the United States and Mexico. *See* Treaty on the Execution of Penal Sentences, Mexico-U.S. (Nov. 25, 1976). Counsel for the Defendant also represented to the Court that due to the Defendant's incarceration in Mexico, he would not be eligible for credit for good behavior as he otherwise would be if he were incarcerated in the United States. *See* 18 U.S.C. § 3624(a)–(b).

Based on information from the Federal Bureau of Prisons (BOP), the Court understands that when an offender is transferred to another country pursuant to a treaty transfer, the BOP Designation and Sentence Computation Center provides the foreign country with a copy of the BOP's sentence computation. However, the Court also understands that when the BOP provides its calculated release date to the foreign authorities, this figure is based on all projected good time conduct the offender would have earned on the sentence imposed by the United States Federal District Court, assuming the offender would indeed earn such good time credit during the course of his or her incarceration.

On July 29, 2024, this Court issued an Order directing the parties to further brief whether Mr. Gaspar would be entitled to good time credit during his incarceration in a Mexican penal

institution. Filing 213. The parties, represented by the United States Attorney for the District of Nebraska and the Federal Public Defender for the District of Nebraska, timely filed a responsive "Joint Brief in Support of Motion for Sentence Reduction." Filing 214. According to the parties, "[t]he legal framework in Mexico allows for the possibility of reducing prison sentences through good behavior, known as beneficios preliberacionales, or preparatory-freedom benefits." Filing 214 at 2. However, the parties go on to state that under Article 85 of the Mexican Federal Penal Code, the Defendant would appear to be ineligible for preparatory-freedom benefits because his conviction involves supplying methamphetamine. Filing 214 at 3.

The matter is now ripe for consideration. For the reasons explained below, the Court will grant the Defendant's Consent Motion and Reduce his term of incarceration from 135 months to 120 months.

## II. LEGAL ANALYSIS

### A. The Court Has Jurisdiction to Rule On this Motion

As an initial matter, the Court concludes that it has jurisdiction to consider this Motion notwithstanding the Defendant's incarceration in Mexico. Article I of the Prisoner Transfer Treaty between the United States and Mexico provides that "[s]entences imposed in the United States of America on nationals of the United Mexican States may be served in penal institutions or subject to the supervision of the authorities of the United Mexican States in accordance with the provisions of this Treaty." Treaty on the Execution of Penal Sentences, Mexico-U.S. (Nov. 25, 1976). However, Article VI of the Treaty goes on to state,

> The Transferring State shall have exclusive jurisdiction over any proceedings, regardless of their form, intended to challenge, modify or set aside sentences handed down by its courts. The Receiving State shall, upon being advised by the Transferring State of action affecting the sentence, take the appropriate action in accordance with such advice.

Treaty on the Execution of Penal Sentences, Mexico-U.S. (Nov. 25, 1976).

At least one other district court to have considered the matter within the context of a § 3582(c)(2) Sentence Reduction Motion has concluded that this language vests exclusive jurisdiction over such motions in United States district courts. *United States v. Garfias*, No. CR 5:19-080-DCR, 2024 WL 457763, at *2 (E.D. Ky. Feb. 6, 2024). Other district court decisions implicitly support this determination as well. *See, e.g.*, *United States v. Arias-Garcia*, No. CR 09-20005-09-KHV, 2024 WL 939930, at *1 (D. Kan. Mar. 5, 2024) (ruling on the merits of a defendant's § 3582(c) motion notwithstanding his incarceration in a Mexican prison); *United States v. Quinonez-Quintero*, No. CR 08-20106-06-KHV, 2024 WL 939928, at *1 (D. Kan. Mar. 5, 2024) (same). The Court agrees that Article VI of the Prisoner Transfer Treaty vests this Court with jurisdiction over the Defendant's Consent Motion for a Sentence Reduction under 18 U.S.C. § 3582(c)(2).

### B. Applicable 18 U.S.C. § 3582(c)(2) Standards

Because the Court has jurisdiction to consider the Defendant's Consent Motion, it now assesses the two-step process for deciding whether to grant a sentence reduction set forth by the Supreme Court in *Dillon v. United States*, 560 U.S. 817, 827 (2010). The Eighth Circuit has summarized this two-step process as follows:

> The first is to determine whether the individual is eligible for a reduced sentence and, if so, to calculate the amended Guidelines range. The second is to set the new sentence, applying the factors set forth in 18 U.S.C. § 3553(a). At this latter step, the court may decide, in its discretion, not to reduce the sentence at all.

*United States v. Darden*, 910 F.3d 1064, 1066 (8th Cir. 2018) (cleaned up).

With respect to the first step, the Court agrees with the parties and the United States Probation Office in concluding that the Defendant is eligible for a sentence reduction under Amendment 821 to the United States Sentencing Guidelines. Filing 208; Filing 210. The

Defendant was assessed zero criminal history points in his Presentence Investigation Report. Filing 157 at 11. Moreover, the record does not disclose any disqualifying bases that would make the Defendant ineligible for such a reduction. See U.S.S.G. § 4C1.1(a)(1)–(7). Accordingly, with the benefit of a two-level zero-point offender adjustment, the Defendant's Total Offense Level is reduced from 33 to 31.[4] This, in turn, reduces his guideline custody range from 135–168 months to 120–135 months.

The Court now turns to the second step of the analysis which requires consideration of the factors set forth in 18 U.S.C. § 3553(a). These factors include general deterrence, specific deterrence, protection of the public, the need to avoid unwarranted sentencing disparities, and the specific history and characteristics of the Defendant. See 18 U.S.C. § 3553(a)(1)–(2). They also require the Court to consider the seriousness of the conduct, the need to promote respect for the law, and the need to provide just punishment for the conduct at issue. See 18 U.S.C. § 3553(a)(2)(A). Although some factors point in different directions, after collectively weighing all of them the Court concludes that the balance of factors weighs in favor of a sentence reduction.

The Court is reticent to grant sentencing reductions to those who qualify as "zero-point offenders" in situations where there is record evidence demonstrating that a defendant came to the United States for the purposes of committing a crime or did so very soon upon first arriving in this country. The Sentencing Commission's decision to include a two-level decrease in calculating the Total Offense Level for qualifying "zero-point offenders" was predicated in significant part upon recidivism studies that found offenders with zero criminal history points were less likely to be

---

[4] The Second Revised Presentence Investigation on the docket indicates that the Defendant's Total Offense Level was calculated by Probation to be 35. Filing 157 at 11. However, the Statement of Reasons Judge Smith Camp filed notes that the Defendant's Total Offense Level was 33. Filing 161 at 1. On June 28, 2024, the United States Probation Office confirmed that the Defendant's Total Offense Level was determined to be 33 at the time of sentencing. Filing 210 at 1.

rearrested following their release than other federal offenders. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010 (last visited August 6, 2024). The Court believes the rationale behind this Amendment does not have the same persuasive value when a defendant has only been in the United States for a short period of time before engaging in crime. While the Court agrees that all qualifying zero-point offenders are eligible for a sentence reduction as it relates to step one of the analysis, how long a defendant has been a zero-point offender and the reliability of the historical data underpinning that determination bear upon the prudential part of the analysis at step two.

Put another way, there is an appreciable difference in the Court's eyes between an individual who lives a completely law-abiding life only to seek his or her first "mulligan" after decades of staying out of trouble, and an individual who happens to be a zero-point offender by virtue of the fact that there is insufficient record evidence to say otherwise because they only recently came to this country yet immediately began engaging in criminal activity upon arriving. The reality is that for those who commit crimes after being in this country for a very short period of time, it is difficult to know whether such individuals truly lived a law-abiding life in their country of origin prior to coming to this country. Yet, even if the Court was presented with sufficiently reliable information indicating that an individual had a prior conviction from his or her country of origin, such a defendant could still qualify as a zero-point offender under the Guidelines because "[s]entences resulting from foreign convictions are not counted" in computing criminal history scores. U.S.S.G. § 4A1.2(h). Consideration of this distinction at step two of the analysis is consistent with the need to assess the specific history and characteristics of a given defendant under 18 U.S.C. § 3553(a)(1).

Mr. Gaspar qualifies as a "zero-point offender," but he was only in this country for less than six months before he was indicted. The record reflects that Mr. Gaspar admitted he did not come to the United States until 2018. Filing 157 at 13. The Indictment was returned on May 22, 2018. So while the Court agrees that the Mr. Gaspar is eligible for a reduction as far as step one is concerned, when it comes to step two the fact that the Defendant had only been in this country for less than half a year and committed a serious felony offense—something the Court may consider as part of the Defendant's specific history and characteristics—weighs against a sentence reduction upon review of the factors the Court is allowed to consider for a reduction under 18 U.S.C. § 3582(c). When a defendant has only been in the country for a short period of time and there is an absence of information regarding the defendant's criminal history in his or her country of origin, it is difficult to say whether the underlying rationale behind the zero-point offender adjustment (*i.e.*, a decreased risk of recidivism) truly applies to such a defendant.

On the other hand, the Court must also consider the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6); *United States v. Heard*, 91 F.4th 1275, 1280 (8th Cir. 2024) (noting the statutory direction to avoid unwarranted national sentence disparities). A defendant serving a federal sentence in the BOP is generally eligible for 54 days' credit against his or her sentence for each year of the prisoner's sentence imposed by the court when, "during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1). The parties have jointly represented to the Court that the Defendant appears ineligible for "preparatory freedom" benefits based on his offense of conviction under the Mexican Federal Penal Code. Filing 214 at 3. While the Court acknowledges that it does not know whether the Defendant would behave in a manner that would result in the award of good time credit, the limited information that is available from the BOP is favorable to the Defendant and

7

indicates that he did not pose a disciplinary problem.[5] Although the Court understands that the BOP generally provides Mexican officials a proposed release date that includes good time credit the defendant would receive if the defendant earned that credit during incarceration, it is also clear to this Court that there is a Mexican law that prohibits providing the Mexican equivalent of "good time" to a defendant who is convicted of the offense Mr. Gaspar has been convicted of here. It is at best unclear whether the Defendant will receive the benefit of good time credit he otherwise would have been eligible for if he were incarcerated in the BOP rather than a Mexican penal facility. Given the position of both parties that the Defendant is categorically ineligible for "preparatory freedom" benefits, the Court harbors concern that the Defendant will, in effect, be required to serve a longer sentence than other similarly situated defendants in the BOP who are able to take advantage of good-time credit under federal law.

This is not the only factor that weighs in favor of a sentence reduction, and the Court's determination does not hinge upon the potential disparities in the availability of good time credit. In particular, the Defendant's relative youth at the time of the offense also weighs in favor of a reduction. When all § 3553(a) factors are collectively weighed and considered, the Court concludes that it is appropriate to reduce the Defendant's sentence to a term of 120 months—the low end of his now-applicable guideline range.

---

[5] The United States Probation Office routinely provides such information to the Court. *See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016)* ("The district court may consider post-sentencing rehabilitation as warranting a reduction, so the record often includes evidence of positive post-sentence conduct"). In this case, the Court has only limited information given that the United States Probation Office's information is limited to how the Defendant behaved during his relatively short stint in BOP custody. What the Court can glean from the available information, however, is that while the Defendant was in BOP custody he was "assessed as a 'low' security classification' and while he may not have completed any educational or substance abuse programming, "no disciplinary actions were noted." Filing 210 at 2.

8

## III. CONCLUSION

After significant consideration, the Court concludes that the balance of factors set forth in 18 U.S.C. § 3553(a) weighs in favor of a sentence reduction. The Defendant's term of incarceration is reduced from 135 months to 120 months. Accordingly,

IT IS ORDERED:

1.  Ramon Ceballo Gaspar's Consent Motion for a Reduced Sentence, Filing 206, is granted;

2.  The parties' Stipulation, Filing 209, is approved; and

3.  Ramon Ceballo Gaspar's previously imposed sentence of 135 months' incarceration is reduced to 120 months' incarceration.

Dated this 13th day of August, 2024.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge